UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CASCO, INC.<br><br>        Plaintiff,<br><br>            v.<br><br>JOHN DEERE CONSTRUCTION &<br>FORESTRY COMPANY<br><br><br>        Defendant | Civil No.: 13-cv-<br><br>Puerto Rico Law 75;<br>Unlawful Termination;<br>Impairment of Contract;<br>Dolus; Commercial Extortion;<br>Provisional Remedy;<br>Damages<br><br>**Jury Trial Demanded** |

## VERIFIED COMPLAINT

TO THE HONORABLE COURT:

Plaintiff, Casco, Inc. (formerly known as Casco Sales Company, Inc.) ("CASCO"), through counsel, states and complains as follows:

## I.   PRELIMINARY STATEMENT

1.   Since 1986, Casco, Inc. ("CASCO") has been the exclusive distributor of John Deere ("Deere") equipment in Puerto Rico and the U.S. Virgin Islands. During 2009, CASCO filed an action in this Court (09-1508)(JAF) under Puerto Rico's Dealer's Contract Law 75, 10 P.R. Laws Ann. § 278 et seq. ("Law 75") arising from Deere's unilateral, pre-textual, and unjustified modification of the payment terms for the purchase of Deere equipment that impaired the existing relationship.

CASCO requested preliminary injunctive relief and damages.

After holding an evidentiary hearing, this Court observed that, unless the matter was resolved, "*…the Court will enter an order granting a Preliminary Injunction."* (emphasis ours). The case settled that same day, on September 8, 2009. In the Settlement Agreement, CASCO's principals provided Deere with adequate financial assurance consisting of personal three-year fixed term guarantees (that Deere never renewed). In return, Deere agreed to reinstate the payment terms. Further, the Settlement Agreement provided, in relevant part, that "Casco and John Deere agree to mutually assist and cooperate with each other for the sale and distribution of John Deere products." Relying on the Settlement Agreement, CASCO voluntarily dismissed the action without prejudice.

As the economic recession in Puerto Rico worsened and strategically timing the notices of termination after expiration of Law 75's three-year caducity period for CASCO to reopen the original federal action, on March 29, 2013, Deere abruptly terminated all the existing distribution agreements with CASCO without prior notice and *effective immediately*.

2

On April 10, CASCO disputed the reasons given for the termination and warned Deere that implementing the termination immediately will be devastating both to customers that need parts to operate their equipment and CASCO's business which depends for its survival on sales of Deere parts and service.

Although CASCO had not made any monetary claim or demand, Deere refused to provide a transition period before the effective termination date and countered with an unconscionable and take it or leave it proposal that, as a condition to sell parts needed by customers, CASCO had to release and waive all legal rights to assert claims under Law 75 for the unjustified termination; accept Deere's appointment of a new distributor; and accelerate payment of all amounts due for the sale of parts without Deere repurchasing any CASCO's existing inventory of parts worth $400,000, among other conditions. CASCO responded that, to mitigate damages, it would agree to pay cash in advance to purchase parts, but would not sign the proposed release agreement. Deere insists on pressuring CASCO to sign the release or else, CASCO will not be shipped parts for its customers.

Viewed in this context, CASCO asserts in the present action claims under Law 75 and the Civil Code for the unjustified

3

impairment, constructive termination, and termination of the agreements, breach of the Settlement Agreement, resolution of contract, economic duress, bad faith, fraud, commercial extortion, preliminary injunctive relief, and damages.

## II.    THE PARTIES, JURISDICTION, AND VENUE

2.   Plaintiff CASCO is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico. It is registered with the Department of State, bearing registration number 39431. Its principal place of business and headquarters are located at Carr. 865 KM 5.6, Bo. Candelaria, Toa Baja, PR 00949.

3.   Defendant, John Deere Construction & Forestry Company ("Deere"), upon information and belief, is a corporation organized and existing under the laws of the State of Delaware and is registered with the Department of State, bearing file number 0522909. Its principal place of business is located at One John Deere Place, Moline, IL 61265.

4.   This Court has jurisdiction over the parties and the subject matter of this action because complete diversity of citizenship exists between the parties under 28 U.S.C. § 1332(a) and (c). The matter in controversy exceeds the sum of

$75,000.00, exclusive of interests and costs. 28 U.S.C. §
1332(a)(1).

5. This Court also has specific personal jurisdiction
over the Defendant because: (1) a substantial part of the events
or omissions giving rise to the claims took place in this forum;
(2) because Deere has purposefully established meaningful
contacts, ties, and relationships with Puerto Rico;(3) because
the claims arise from and relate to those meaningful contacts;
and (4) because the exercise of personal jurisdiction over Deere
will not offend traditional notions of fair play and substantial
justice.

6. This Court is the proper venue as Deere is subject to
the specific personal jurisdiction of this Court because: (1) a
substantial part of the events or omissions giving rise to the
claims took place in this District; (2) because Deere has
consistently maintained minimum contacts with the forum of
Puerto Rico; and (3) because the claims arise from or relate to
those minimum contacts. 28 U.S.C. § 1391.

III.   **FACTS COMMON TO ALL CLAIMS**

7. On September 30, 1986, CASCO and John Deere
Intercontinental Limited, Deere's predecessor-in-interest,
entered into a "John Deere Dealer Agreement Industrial" ("Dealer

Agreement"), whereby CASCO would exclusively sell, distribute, and service John Deere branded equipment and parts in its "Area of Responsibility" designated as Puerto Rico and the U.S. Virgin Islands.

8.   At various times since on or about 2004 and to this day, Deere has engaged in a continuous pattern of bad faith and harassment towards CASCO, including but not limited to: 1) failing to provide technical and service support to CASCO; 2) insisting upon relying on knowingly skewed data incorrectly gathered by Deere from accurate financial information supplied by CASCO for the purpose of creating a paper trail of unfavorable reviews of CASCO's financial condition; 3) unilaterally and without sufficient prior notice modifying CASCO's terms of payment from a term of 120 to 270 days net credit (depending on the equipment) to cash in advance; 4) constructively terminating the Dealer Agreement by cancelling an order on December 18, 2012 for the purchase of an excavator worth $264,000, and most recently on March 29, 2013, 5) by unlawfully impairing and terminating CASCO's Dealer Agreements without pre-termination notice and just cause.

9.   On June 5, 2009 CASCO filed an action against Deere in the U.S. District Court for the District of Puerto Rico for

breach of Law 75, breach of contract, breach of the duty of good faith, provisional remedy, and damages.

10. After holding a preliminary injunction hearing, Hon. José A. Fusté, U.S.D.J., granted the parties time to resolve the matter, stating that otherwise "the Court will enter an order granting the Preliminary Injunction."

11. On September 8, 2009, CASCO and Deere entered into a Settlement Agreement whereby both parties, among other things, agreed to:

### 1. CONSIDERATIONS

1.1 CASCO's stockholder, Mr. Enrique Irizarry Sorrentini and his wife, Ana A. Armendáriz de Irizarry (the "Guarantors") **will grant John Deere a personal guaranty (the "Guaranty") for the payment by CASCO for all of CASCO's purchases of complete goods, attachments, and service parts from John Deere**, the terms of which are included in a separate document incorporated to this Settlement Agreement as **Exhibit 1**. This Guaranty will have a term of **three (3) years**, subject to an annual **review** at the end of each of the three (3) CASCO fiscal years. It is also represented that the Guaranty is not in conflict with other guaranties rendered by the Guarantors (Underscore ours).

...

1.4 **CASCO and John Deere agree to mutually assist and cooperate with each other in the sale and distribution of the John Deere products.** In the spirit of cooperation and mutual assistance, the Parties also agree and commit to working jointly in setting and achieving their goals in

the sale of the John Deere products in Puerto
Rico and the U.S. Virgin Islands.

...

1.7 The terms and consideration of this
Settlement Agreement are accepted solely in
compromise and settlement of the disputed
claims, and shall not be construed as a
modification or waiver of any of CASCO's or John
Deere's rights under the Dealer Agreement
(Emphasis ours).

12.   Notwithstanding CASCO's financial condition and the
personal guarantees executed by the Irizarry's in favor of
Deere, since the Settlement Agreement in 2009 and becoming
evident during 2012, Deere has acted in bad faith and intending
to terminate CASCO by:

i. discriminating against CASCO by excluding CASCO
from attending a dealer conference held in the
Dominican Republic on or about February 2012
based on the pretext that Deere does not share
sensitive confidential information with any
dealers that carry competitive product lines
despite the fact that CASCO had attended dealer
conferences in the past and the Dealer
Agreement did not prohibit the sale or
distribution of competing product lines;

8

ii. cancelling unilaterally on December 18, 2012 a purchase order for the sale made by CASCO of a John Deere excavator worth $264,000 conditioning the sale on CASCO agreeing to unreasonable terms and conditions in a "new model qualification process" that impaired the existing distribution relationship, negatively impacted CASCO's cash flow, and caused CASCO not only to lose that sale but to incur in expenses of $15,000 to rent equipment for the customer and mitigate damages;

iii. forcing CASCO to purchase a new branded placard for $20,000 from the only Deere-authorized vendor located in Argentina and unreasonably rejecting CASCO's proposal to obtain a branded placard bearing the same quality, but from a local and more economical vendor;

iv. placing CASCO on credit hold after CASCO had made, before receipt of the notices of termination on March 29, 2013, payments in full of certain invoices. Further, Deere's acceptance of partial payments of $225,000 made

in good faith by CASCO on December 6, 13, 2012, January 15, 21, February 8, 28, and March 19, 2013 of outstanding invoices -without returning the checks or raising any objections - modified the pre-existing and non-essential payment terms under the Dealer Agreement. Since 2005, the course of dealings had been standard 60 day payment terms from date of invoice or bill of lading for orders of parts, subject to extensions or acceptance of partial payments and the imposition of interest for late payments beyond the extended payment terms, but never the threat of immediate termination of the Dealer Agreement without any opportunity for cure.

13. Despite CASCO's financial ability to serve Deere's business in Puerto Rico, good faith in its business relationship with Deere, and compliance with its essential obligations under the Dealer Agreement, on March 29, 2013, Deere sent CASCO three letters unlawfully terminating the Dealer Agreements based on specious pretexts, and in retaliation for CASCO's sister company's rental business and the filing of the 2009 federal

lawsuit.

14.  In the termination letters, Deere advises CASCO of the termination of both the Dealer Agreement and the Deere Euclid Service and Parts Center Agreement, effective immediately, as well as of the termination of the Hitachi Construction Machinery Corporation Agreement, the last one effective 90 days from the notice of termination.

15.  These letters are devoid of just cause and pre-termination notices in violation of Article 11(a) of the Dealer Agreement and Law 75.  Article 11(a) of the Dealer Agreement, in pertinent, states as follows:

> (a)    Either party may give the other party **90 days advance notice of termination** of this Agreement at any time… (Emphasis ours).

16.  In an attempt to circumvent the pre-termination notice requirement under the Dealer Agreement, Law 75, and the Settlement Agreement, Deere claims to have reasons to support its termination decision –most of which were never raised prior to the termination, some were settled during 2009, and all of which are self-serving, pre-textual, and without merit.

17.  In light of Deere's precipitous termination without providing prior notice and a transition period, CASCO, with a sense of urgency, communicated with Deere in an attempt to

discuss and clarify Deere's concerns and to reach a compromise to honor both outstanding and future purchase orders to meet the customers' orders and to safeguard CASCO and Deere's business reputation and goodwill.

18. CASCO has placed Deere on notice of the irreparable consequences that terminating the Dealer Agreement would have on CASCO as the sale, distribution, and service of Deere parts represent 64% of CASCO's total sales of parts during 2012 and 38% of CASCO's total sales for the same period.

19. In response to CASCO's concerns, on April 9, 2013, Deere sent an email to CASCO advising that its ability to order parts to support Deere's customers in Puerto Rico will be conditioned to, among other things:

1. A special temporary parts agreement ("TPA") executed by both parties for a term of 120 days;

   ...

4. The TPA will contain mutual releases under which CASCO and JDCFC will release each other from all claims in any way related to the Dealer Agreements and the termination of the Dealer Agreements as set forth in item 1.

5. CASCO will not object to JDCFC appointing a new dealer

in Puerto Rico and will not pursue any type of legal action against JDCFC and/or the new dealer to prevent the new dealers appointment by JDCF or recover damages from the new dealer.

...

7.   Parts ordered by CASCO will [sic] shipped only upon payment of cash in advance.

20.   The following day, CASCO sent a letter to Deere rejecting its unconscionable terms and conditions and once again reiterating that the illegal termination of the Dealer Agreement will force it to stop doing business since Deere branded goods represent 64% of CASCO's total sales of parts during 2012 and 38% of CASCO's total sales for the same period.

21. Despite CASCO's pleas for assistance and cooperation to mitigate damages, Deere refuses to reach a compromise, standing firm in its decision to terminate the Dealer Agreement immediately. By so doing, Deere is committing tortious acts in Puerto Rico by unilaterally and illegally terminating CASCO's Dealer Agreement and by impairing and interfering with CASCO's business post-termination, causing immediate and irreparable harm and economic damages to CASCO.

IV.  **CLAIMS FOR RELIEF**

 **A. *Count No.1: Impairment and Constructive Termination of Dealer Agreement and Damages under Law 75.***

 22.  CASCO incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

 23.  The Dealer Agreement, the course of dealings, and CASCO's performance of its obligations as an exclusive distributor by assuming risks and creating a market and clientele for Deere in Puerto Rico qualify as a dealer's contract under Law 75. 10 P.R. Laws Ann. Sec. 278 (a)(b) ("Law 75").

 24.  A dealer's contract protected by Law 75 cannot be terminated, impaired, or not renewed by the principal without just cause. 10 P.R. Laws Ann. Sec. 278(a)(b).

 25.  Further, Law 75, its interpretative case law, and the Dealer Agreement require the principal to provide pre-termination notice to the dealer in an effort to mitigate damages.

 26.  Since 2012, Deere illegally impaired and terminated the Dealer Agreement in contravention of Law 75, its interpretative case law, and the provisions set forth in the Dealer Agreement.

 27.  On December 18, 2012, Mr. Mauricio Lara, Manager of Commercial Development of Deere, wrote a letter cancelling

CASCO's purchase order for a brand new excavator sold by CASCO to Nogama Construction Corp. for $264,000. The sale provided both a one year-limited warranty and an additional one-year warranty on power train and hydraulics.

28.   Instead of complying with Deere's obligation in the Settlement Agreement to cooperate with CASCO in good faith to consummate the sale, Mr. Lara cancelled the order unilaterally solely on the ground that Deere required CASCO to complete a "New Model Qualification Process (NMQ)."

29.   Deere's NMQ compelled CASCO, among other conditions, to undertake training to serve and repair new equipment and invest substantial sums of money to purchase new parts and tools.

30.   Deere's NMQ was non-negotiable.

31.   Conditioning a material sale of equipment on a take it or leave it basis with acceptance of the NMQ was a pretext to terminate the Dealer Agreement and financially strangle CASCO. Deere's NMQ and the cancellation of the order impaired the existing contractual relationship with CASCO without just cause and adversely affected CASCO's cash flow and its ability to pay invoices in full as they became due.

15

32. Deere's unilateral, arbitrary, and unjustified cancellation of the purchase order for the excavator caused a constructive termination of the Dealer Agreement.

33. Mr. Lara was Deere's representative who later wrote the termination letters on March 29, 2013.

34. Deere's pattern of continuous impairment of the existing relationship, culminating with the constructive termination on December 18, 2012 and the actual termination of the Dealer Agreements on March 29, 2013, has adversely affected CASCO's sale, distribution, and ability to maintain or expand the market and clientele for Deere branded goods in Puerto Rico. Further, it has prevented CASCO from achieving a reasonable return on its investment even when, despite Deere's unfounded allegations, CASCO has consistently fulfilled its duties and obligations under the Dealer Agreement.

35. CASCO estimates that its lost profits and the loss of goodwill and damage to its reputation with customers and out of pocket expenses incurred because of Deere's actions exceed $3 million dollars for impairment and constructive termination damages under Section 278b(c) and (d) of Law 75.

**B. _Count No.2: Illegal Termination under Law 75 and Damages._**

36. CASCO incorporates by reference all of the foregoing

16

paragraphs as though set forth fully herein.

37. Deere's failure both to meet its burden to prove just cause and to give adequate pre-termination notice of CASCO's Dealer Agreements constitute an unlawful termination of the Dealer Agreement. 10 P.R. Laws Ann. Sec. 278(a)(b).

38. Deere's impairment and illegal termination frustrate the fundamental cause or object of the Dealer Agreements, and cause damages to CASCO. With the termination of the Dealer Agreements, CASCO faces immediate and irreparable harm that will affect the present and future benefits derived under the Dealer Agreement as it will be forced to fire employees and cease operations since Deere branded goods represent 64% of CASCO's total sales of parts during 2012 and 38% of CASCO's total sales for the same period.

39. Likewise, the termination of the agreements will destroy the value of the goodwill created by CASCO for the past 27 years as the exclusive distributor of Deere branded goods in Puerto Rico and the U.S. Virgin Islands.

40. CASCO requests damages under Section 278b(c) and (d) of Law 75 for the illegal termination of the Dealer Agreements consisting of lost benefits and loss of goodwill, along with a set off of the value of the inventory of Deere branded goods

currently held by CASCO, among other actual damages, which after deducting any benefits received from any continuing sales of Deere's products are estimated to exceed $3 million dollars, plus interest, costs, expenses, attorney's fees, and expert witness fees.

41.  In the alternative, CASCO requests specific performance compelling Deere to comply with the Dealer Agreement, including the exclusivity obligations, and not allow in the interim the distribution, sale, and servicing of Deere branded goods in Puerto Rico by other Deere dealer, except through CASCO.

**C.    Count No.3: Deere's Breach of the Covenant of Good Faith and Fair Dealings.**

42.  CASCO incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

43.  Puerto Rico law implies a covenant of good faith and fair dealings in all contracts entered into by the parties when Puerto Rico law is applicable to any dispute arising thereunder. 31 L.P.R.A. §§ 2994 and 3375.

44. Deere's purposeful failure both to prove just cause and provide adequate pre-termination notice as required by Law 75 and the Dealer Agreement, especially when the sale, distribution, and service of Deere parts represent 64% of

CASCO's total sales of parts during 2012 and 38% of CASCO's total sales for the same period, constitute a breach of the implied covenant of good faith and fair dealings.

45. Deere's illegal termination has caused CASCO not to receive the expectations or to realize the benefits of the Dealer Agreements as it has been pressured to consent to a termination without just cause or pre-termination notice.

46. Further, Deere's proposed agreement is not only unconscionable, but illegal as it requires CASCO to waive its rights to pursue any claim in the future arising from Deere's illegal termination without any consideration or the payment of any compensation. Deere's illegal actions place CASCO in a disadvantageous position because Deere, as principal, has a heightened bargaining power vis-a-vis CASCO, which Deere is using to its advantage to force CASCO to forego its rights under the Dealer Agreement and Law 75.

47. Deere's actions constitute bad faith as they are neither based upon sound commercial judgment nor involve an exercise of business discretion.

       *D.*          *Count No. 4: Deere's Deceit, Duress, Undue Influence, Commercial Extortion under Art. 1802 of Puerto Rico Civil Code, breach of fiduciary duties in the performance of the Dealer Agreement, breach of the Settlement Agreement, and resolution.*

48. CASCO incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

49. Deere acted in bad faith and with "dolus" or deceit in the performance of both the Settlement Agreement and the Dealer Agreement because the reasons set forth in the termination letters are pretexts or a subterfuge to implement Deere's insidious machinations to take over and appropriate unilaterally the distribution of Deere branded goods without just cause and consolidate its operations with a newly appointed distributor in Puerto Rico and the U.S. Virgin Islands.

50. As specified above, Deere breached its material obligation in the Settlement Agreement to "mutually assist and cooperate with [CASCO] in the sale and distribution of the John Deere products."

51. Deere has also abused its superior bargaining power and leverage to coerce CASCO to sign- on a take it or leave it basis- an agreement conditioning CASCO's ability to order parts to support Deere's customers with a waiver of its right to pursue claims arising from Deere's illegal termination; terms

and conditions that are non-negotiable if CASCO is to serve its customers. By threatening to withhold shipments immediately if Deere's demands are not met unconditionally, the direct result to CASCO will be to shut down operations or renounce its legal rights for nothing of value.

52. Any purported reasons that Deere may have for the termination and its failure to provide pre-termination notice to CASCO are not "just cause" as defined under Law 75, but self-serving pretexts or shams to sever ties with CASCO.

53. Deere's bad faith and malicious actions constitute "dolo" ("dolus"), undue influence, commercial extortion, economic duress, and breach of its fiduciary duties in the performance of contractual obligations under Puerto Rico civil law, which have caused substantial damages to CASCO from the impairment and termination of its exclusivity rights under the Dealer Agreement.

54. The damages to CASCO from having to terminate employees and close its operations because of the unlawful termination are estimated to exceed $3 million dollars, exclusive of interest, costs, expenses, attorney's fees and expert witness fees.

55. Deere entered into the Settlement Agreement under false and misleading pretenses never intending in good faith to

comply with its terms and looking for any excuse to terminate the Dealer Agreements. By dismissing the federal action, CASCO relied to its detriment on the material obligations of Deere in the Settlement Agreement. Had CASCO not been deceived, it would have obtained a preliminary injunction to enjoin Deere and would have asserted a constructive termination claim under Law 75 for five years of lost benefits prior to 2009 which, because of market and economic conditions in Puerto Rico outside of CASCO's control, should be greater than the net benefits due for the five year period prior to the actual termination on March 29, 2013.

56. Based on Deere's serious deceit, CASCO requests resolution of the Settlement Agreement and compensatory or restitution damages under the Civil Code and Law 75 which are estimated to exceed $3 million dollars based on its profits realized on the sale and distribution of Deere equipment and parts for the five year period prior to 2009.

**E.          *Count No. 5: Provisional Remedy under Law 75.***

57. CASCO incorporates by reference all of the foregoing paragraphs as though set forth fully herein.

58. Under Law 75, in any litigation in which there is directly or indirectly involved the termination of a dealer's

contract, the Court may grant, during the time the litigation is pending resolution, any provisional remedy ordering any of the parties, or both, to continue, in all its terms, the relation established by the dealer's contract and/or abstain from performing any act or any omission in prejudice thereof. The Court shall consider the interests of all parties concerned and the public policy behind Law 75. 10 L.P.R.A. §278b-1.

59.  As Deere illegally terminated the Dealer Agreements without pre-termination notice and just cause, CASCO is entitled to Law 75's provisional remedy, enjoining the termination of the Dealer Agreements and ordering Deere to continue performing under the Dealer Agreements during the pendency of this litigation.

60.  This provisional remedy is essential to prevent CASCO from suffering imminent and irreparable harm as the sale, distribution, and service of Deere parts represent 64% of CASCO's total sales of parts during 2012 and 38% of CASCO's total sales for the same period and customers are being irreparably harmed from their inability to obtain parts and service from CASCO, as their exclusive distributor, to operate the equipment.

61.  Deere's unreasonable and unjustified actions will

force CASCO to stop doing business and lay off its entire workforce.

62. As such, a provisional remedy is warranted to maintain the status quo and protect CASCO's business, reputation, and goodwill until the final resolution of this matter.

**WHEREFORE**, CASCO requests a Judgment:

a) awarding CASCO monetary damages in excess of $3 million dollars for the illegal constructive and actual termination of the Dealer Agreements and for Deere's breach of the Settlement Agreement, deceit, duress, undue influence, commercial extortion, bad faith, and breach of the implied covenants of good faith and fair dealings; award an additional sum exceeding $75,000 for impairment damages consisting of lost profits on sales of Deere's products to customers and expenses incurred, and an additional sum to be determined for the loss of value from the closing of the business;

b) only in the alternative to termination damages, compel specific performance of Deere's contractual obligations and prohibit Deere from appointing a new dealer of Deere branded goods in Puerto Rico and the

U.S. Virgin Islands other than CASCO;

c) enjoin the termination of the Dealer Agreements and order Deere to continue performing under the Dealer Agreements during the pendency of this litigation;

d) grant CASCO a reasonable sum for interest, attorneys' fees, expert witness fees, costs, and expenses as the prevailing party under Law 75, and any other relief that is appropriate under the law or equity;  and

e) CASCO demands trial by jury on all claims so triable.

**VERIFICATION:** I certify, under penalty of perjury, that the foregoing is true and correct.

Executed and dated: April 25th, 2013.

_____
Enrique F. Irizarry
President of Casco, Inc.

Respectfully submitted,

In San Juan, Puerto Rico, this 25th of April, 2013.

**CASELLAS ALCOVER & BURGOS, P.S.C.**

Ricardo F. Casellas Sánchez, Esq.
Sarika J. Angulo Velázquez, Esq.
Counsel of Plaintiff Casco, Inc.
P.O. Box 364924
San Juan, Puerto Rico 00936-4924
Tel.:   (787) 756-1400
Fax:    (787) 756-1401
Mobile: (787) 402-0747
Email:  rcasellas@cabprlaw.com
Email:  sangulo@cabprlaw.com


s/Ricardo F. Casellas Sánchez
USDC No. 203114


s/Sarika J. Angulo Velázquez
USDC No. 230502

26