IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CASCO, INC.,<br><br>**Plaintiff,**<br><br>v.<br><br>**JOHN DEERE CONSTRUCTION & FORESTRY COMPANY,**<br><br>**Defendant.** | **CIVIL NO. 13-1325 (PAD)** |

**OPINION AND ORDER**

Delgado-Hernández, District Judge

  This is an action for violation of the Puerto Rico Dealers Act, P.R. Laws Ann. tit. 10 §§ 278, *et seq*. ("Law 75"), and *dolus* under the Puerto Rico Civil Code, Article 1055, P.R. Laws. Ann. tit. 31 § 3019.  Before the court are:

- John Deere's "Motion in Limine Regarding Plaintiff's CPA" (Docket No. 156), which Casco opposed (Docket No. 162).  John Deere replied (Docket No. 163), and Casco sur-replied (Docket No. 164);

- "Defendant John Deere Construction & Forestry Company's Motion in Limine" (Docket No. 177), which Casco opposed (Docket No. 186). John Deere replied (Docket No. 188); and

- "Plaintiff's Motion in Limine to Suppress Termination Letter" (Docket No. 180), which John Deere opposed (Docket No. 185).  Casco replied (Docket No. 187).

For the reasons explained below, Docket No. 156 is DENIED, Docket No. 177 is GRANTED IN PART, and Docket No. 185 is DENIED.

## I.  BACKGROUND

### A. Basic Allegations

Casco and John Deere were parties to a distribution agreement, pursuant to which Casco distributed John Deere products in Puerto Rico and the U.S. Virgin Islands. The relationship soured, and in 2009, Casco initiated an action against John Deere asserting Law 75 violations. That case was settled, but in 2013, John Deere terminated the distributor contract. This action ensued.

Among other things, Casco claims that John Deere is liable under (1) Law 75 for having terminated the agreement without just cause; and (2) the Civil Code for having acted with *dolus* to wrongfully induce Casco to settle the 2009 action, in order to decrease its Law 75 exposure in anticipation of eventually terminating the distribution agreement. It points out that when John Deere terminated the agreement in 2013, the distribution line had lost approximately 66% of its 2009 value, and contends that because of John Deere's *dolus*, it is entitled to recover that loss here.

Both parties submitted motions for summary judgment (Docket Nos. 64 and 66), which the court denied (Docket No. 117). The parties then filed motions *in limine,* requesting advance rulings on several evidentiary issues.

### B. Statutory Backdrop

Law 75 governs the business relationship between principals and the locally appointed distributors/dealers for marketing their products. The statute was initially enacted to avoid the inequity of arbitrary termination of distribution relationships once the designated dealer had successfully developed a local market for the principal's products and/or services. Caribe Indus. Systems, Inc. v. National Starch & Chemical Co., 212 F.3d 26, 29 (1st Cir. 2000)(citing Irvine Murad Skin Research Labs, Inc., 194 F.3d 313, 317-318 (1st Cir. 1999)). To accomplish its goal,

Law 75 limits the principal's ability to end the relationship unilaterally except for just cause, while subjecting the principal to considerable economic liability for unjustifiable terminations. Id. Later, the protection afforded to dealers was extended to include the conduct of a principal which, albeit not ending the contract, was deemed detrimental to the distribution relationship. In those instances, impairments without just cause would subject the infringing party to the same liability provided for terminations. Id.

In general, *dolus* entails a malicious intent to do harm rather than mere negligence. Oriental Financial Group, Inc. v. Federal Ins. Co., Inc., 598 F.Supp.2d 199, 218-219 (D.P.R.2008)(quoting Event Producers, Inc. v. Tyser & Co., 854 F.Supp. 35, 38 (D.P.R. 1993)); see also, Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659, 666 (1997); Márquez v. Torres Campos, 111 D.P.R. 854, 863 (1982). It encompasses deceit, fraud, misrepresentation, undue influence and other insidious machinations, and may take place: (1) in the formation of a contract, and (2) in the performance of a contractual obligation. Márquez, 111 D.P.R. at 863-864.

*Dolus* in the formation of a contract occurs when by insidious machinations or deceptive means, a party is induced to execute a contract which otherwise it would not have made. P.R. Laws Ann. tit. 31 §§ 3404 to 3409; Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp., 92 F.Supp.2d 8, 18 (D.P.R. 2000). *Dolus* in the performance of a contractual obligation occurs where a party, knowingly and intentionally, through deceitful means, avoids complying with its contractual obligation. Generadora de Electricidad del Caribe, 92 F.Supp.2d at 18-19. The party who engages in *dolus* is liable for all damages knowingly caused by the nonfulfillment of the obligation. Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 378-379 (1st Cir. 2011); P.R. Laws Ann. tit. 31 §§ 3018-3019 and 3024.

## II.     DISCUSSION

### A.  John Deere's First Motion in Limine (Docket No. 156)

John Deere seeks to prevent Casco's expert witness, Reynaldo Quiñones, from testifying as to (1) constructive termination damages; and (2) damages resulting from *dolus* (Docket No. 156 at pp. 1 and 19). It argues Casco originally offered Mr. Quiñones' testimony in support of a constructive termination claim, and now wishes to change the scope of the expert's reports and the capacity in which he is offered as a witness (Docket No. 163 at p. 3). In its view, Casco intends to use the expert's testimony to illustrate "benefits illicitly procured by John Deere," and complains that Mr. Quiñones did not include any *dolus* related calculations in his reports (Docket No. 156 at pp. 11-12 and 19; Docket No. 163 at pp. 2 and 4).[1]

Casco avers it is not pursuing a claim of constructive termination and does not seek to present expert testimony of any such damages under Law 75 (Docket No. 162 at p. 2). However, it argues that distribution agreements are not beyond the scope of the *dolus* provisions of the Puerto Rico Civil Code, and by seeking to foreclose Casco's presentation of evidence of damages suffered as a result of what it has characterized as *dolus*, John Deere attempts to prevent the *dolus* cause of action from reaching the jury. Id. at pp. 2-4. From this perspective, it states that Mr. Quiñones' calculations are relevant for the jury to determine the economic consequences of John Deere's actions, in the event it found that John Deere acted with *dolus*. Id. at pp. 8, 14.

The first step in evaluating the admissibility of expert testimony on *dolus* related damages – or any damages for that matter – is determining whether the damage analysis was included in the expert's written report. As set forth in Fed.R.Civ.P. 26(a)(2)(B), an expert's written report shall

---

[1] The expert prepared two (2) reports: (1) "Plaintiff's Expert Witness Report on Computation of Damages," dated August 15, 2013 (Docket No. 156, Exh. 1); and (2) "Plaintiff's Expert Witness Amended Report on Computation of Damages," dated January 23, 2014 (Docket No. 156, Exh. 10).

contain a complete statement of the opinions expressed and the basis and reasons therefor, and the data or other information considered by the witness informing the opinion. The obligation is implemented by way of Fed.R.Civ.P. 37(c)(1), under which the required sanction in the ordinary case, is mandatory preclusion unless the failure was substantially justified or harmless. See, Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004)(discussing timing and disclosure of expert opinions under Rule 26).

Here, the expert witness included *dolus* calculations in both reports. See, Scenario 2 included at Docket No. 156, Exh.1 at p. 27; see also, Scenario 2 included at Docket No. 156, Exh. 10 at pp. 17-18. So, he should be able to testify as to them. Yet the analysis he made is different from the analysis Casco has made in response to John Deere's motion. According to Casco, but for an agreement it reached with John Deere to settle a Law 75 case in 2009, it would have continued to prosecute that action and ultimately obtained an award of $4,600,574.00 for termination damages under Law 75. But by deceitfully inducing Casco to settle and dismiss the 2009 action, John Deere decreased its exposure by approximately two-thirds which, conversely, caused Casco to lose two-thirds of the value of the line by the time John Deere terminated the distribution agreement in 2013. For Casco, then, the 2013 value must be subtracted from the 2009 value to assess loss. See, Docket No. 162 at p. 9. The expert did not, however, compare the two values to reach a *dolus* damage figure, although he did include both figures in different parts of his reports. Should he be allowed to adjust his testimony at trial to reflect Casco's computations?

The Advisory Committee's Notes on Rule 26(a)(2)(B) point out that experts must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons for the opinion. See, Fed.R.Civ.P. 26(a)(2)(B) advisory committee's notes on the 1993 amendment. From that standpoint, it would seem that the

expert's report is incomplete. And as indicated, under Rule 37(c)(1) a party who has failed to provide information required by Rule 26(a) risks losing use of that information in a hearing. Nevertheless, the rule limits that remedy to cases where substantial justification does not exist for failure to produce the information or the failure cannot be considered harmless. See, Fed.R.Civ.P. 37(c)(1). Casco has not justified the expert's omission to include in his report the full analysis of the damages attributed to *dolus*. Thus, the question is whether that failure is harmless. Based on the record, it would appear to be so.

The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent. See, Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 60 (1st Cir. 2001)(so stating); Poulis-Minott, 388 F.3d at 358 (same). Disclosure prevents the undue tactical advantage that can be gained by failing to unveil information in a timely fashion and thereby potentially deprive a party of the opportunity to depose the expert and challenge his opinions. Id. Further, it increases the quality of trials by better preparing attorneys for cross-examination. LaPlace-Bayard v. Batlle, 295 F.3d 157, 162 (1st Cir. 2002).

Casco's expert's reports include both of the relevant figures – the value of the line in 2009 and the value of the line in 2013 – with reference to all relevant supporting data. See, Docket No. 156, Exh. A at pp. 10-11 and Exh. D at pp. 10, 18. John Deere received the reports, and deposed the expert. It is in a position to challenge the expert's opinions, and will undoubtedly do so at trial. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof "are the traditional and appropriate means of attacking (arguably) shaky but admissible evidence." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993)(citing Rock v. Arkansas, 483 U.S. 44, 61 (1987)). Additionally, in the event the court concludes at trial that the evidence presented supporting a position is insufficient to allow a

reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment. Id. John Deere would be able to so argue, if appropriate. And in the process it would face no surprises. In these circumstances, the reports' omission cannot be considered unduly prejudicial to John Deere.

John Deere claims the expert's analysis should be excluded as speculative. It maintains the analysis erroneously assumes that (1) the dealer agreement was terminated in 2009; (2) Casco would have prevailed on a constructive termination claim under Law 75; and (3) the jury would have awarded Casco $4,600,574.00. The argument is not without some persuasive force, since (1) the dealer agreement was not terminated in 2009; (2) the court previously ruled that constructive termination is not actionable under Law 75 (See, Docket No. 117 at p. 6); and (3) there is no evidence that the court in the 2009 action would have ruled differently.

But the expert's calculations are not exclusive to an analysis of statutory damages under Law 75, and may be relied on to support damage allegations under a *dolus* theory of liability. The 2009 value of the line may be used as Casco has argued, as the baseline to calculate those damages. Therefore, Mr. Quiñones may testify as to the value of the line in 2009, just as he may testify as to the value of that line in 2013.

B. **John Deere's Second Motion in Limine (Docket No. 177)**

John Deere moves to exclude (1) statements and comments pertaining to the Evidentiary/Preliminary Injunction Hearing held on September 2, 2009, in Civil Case No. 09-1508 (JAF);[2] (2) evidence related to negotiations between John Deere and Casco after the contract termination letter of March 29, 2013; (3) evidence of any dispute or controversy between John

---

[2] In that case, the judge forewarned the parties that if they failed to reach an agreement by that day at 4:00 p.m., he would enter an order granting the request for preliminary injunction.

Deere and Casco prior to September 8, 2009; and (4) newspaper and magazine articles addressing the state of the construction industry in Puerto Rico (Docket No. 177 at pp. 1-3).

Casco maintains that (1) the presiding judge's statements and testimony pertaining to the negotiations leading to the 2009 settlement agreement are admissible as evidence of John Deere's insidious machinations and of *dolus*, rather than to prove or disprove the validity or amount of a disputed claim (Docket No. 186 at p. 6); (2) the presentation of pre-2009 evidence does not require John Deere to defend the 2009 litigation again, but instead seeks to discredit as pretextual the reasons proffered to terminate the distribution agreement in 2013 (Id. at pp 3-6);[3] (3) contemporaneous notes taken in the course of Casco's business documenting John Deere's threats are admissible under Fed.R.Evid. 803(6)(Id. at pp. 9-12); and (4) John Deere's request that newspaper and magazines articles be excluded is premature and without basis. Id. at pp. 12-13.

First, statements the court made in Civil Case No. 09-1508 (JAF), particularly the presiding judge's comment that if settlement was not reached by 4:00 p.m. a preliminary injunction against John Deere would be issued, lack a full description of the judge's reasoning. In that sense, they convey an incomplete picture of the underlying issue being addressed at the time the statements were made. Even if somehow relevant under Fed.R.Evid. 401, their small probative value would be substantially outweighed by danger of generating confusion and misleading the jury, to the point of requiring their exclusion under Fed.R.Evid. 403.[4]

---

[3] Casco intends to present evidence that since 2005 John Deere's executives became infuriated of Casco's business relationship with Volvo Construction, and consequently engaged in a pattern of detrimental conduct. According to Casco, it should be left to the jury to decide whether John Deere's purported reasons are more credible than the actions taken by John Deere's executives since 2005.

[4] Rule 403 of the Federal Rules of Evidence authorizes the court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Second, evidence of negotiations is inadmissible under Fed.R.Evid. 408. The rule prohibits a party from attempting to prove or disprove the validity or amount of a disputed claim with evidence of furnishing or accepting a valuable consideration in compromising or attempting to compromise the claim, or with conduct or statements made in those compromise negotiations. Fed.R.Evid. 408. The prohibition is premised primarily on the notion that without this protection parties would be deterred from entering into settlement discussions with their opponents, undercutting the objective of promoting the settlement of disputes outside of the judicial process. See, S.A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist., 50 F.3d 476, 480 (7th Cir. 1995)(so noting); Catullo v. Metzner, 834 F.2d 1075, 1078-1079 (1st Cir. 1987)(same).

Rule 408 does not require exclusion when the evidence if offered for another purpose. See, McInnis v. A.M.F., Inc., 765 F.2d 240, 248 (1st Cir. 1985)(recognizing that "[a]lthough Rule 408 bars the admission of evidence of settlement to prove liability or the validity of a claim, it expressly allows such evidence offered for other purposes"); S.A. Healy Co., 50 F.3d at 480(same); Catullo, 834 F.2d at 1078-1079 (admitting evidence of terms of settlement agreement in action to enforce the agreement). Consequently, the rule has been construed to prohibit evidence of offers, counteroffers, conduct, and statements made in failed settlement negotiations to establish a party's liability in the dispute that was the subject of the negotiation, not some other claim. See, Lyondell Chemical Co. v. Occidental Chemical Corp., 608 F.3d 284, 298 (5th Cir. 2010)(stating principle); 3 Michael H. Graham, Handbook of Federal Evidence § 408.1 (7th ed. 2012)(same).

Casco argues that the evidence of negotiations is admissible because it refers to the Law 75 claim, whereas Casco would present it as evidence in support of a different claim, namely the *dolus* claim. Courts vary in their understanding of the term "claim" and thus, in their understanding of when evidence is introduced to prove liability for, invalidity of, or the amount of the *claim* for

purposes of Fed.R.Evid. 408. See, Lyondell, 608 F.3d at 297-298 (surveying caselaw regarding scope of Rule 408). Most agree that "claim" does not necessarily mean the same "legal claim" that was being negotiated and to which the evidence sought to be excluded refers. See, Lyondell, 608 F.3d at 297-298 (identifying point of consensus among courts); McInnis, 765 F.2d at 248 (discussing how Rule's 408 prohibition applies to settlement evidence involving not only the parties to the immediate lawsuit, but that related to a defendant and a third party and between a plaintiff and a third party).

Consistent with this approach, in applying Rule 408 care has been taken to ensure the claim for which the party attempts to present settlement evidence is truly different than the claim being litigated. See, Graham, supra at 638 (so noting). When the claims are related in the sense that the one forms the basis of the current dispute or where there are multiple disputes arising from the same transaction, a different claim is not present, and the bar of Rule 408 applies. Id. at 641 and cases cited therein. Such is the case here.

If one is to believe Casco's interpretation of events, John Deere deceitfully induced Casco to settle a Law 75 claim in 2009 to benefit from a significant decrease in the value of the line so as to lower its potential liability resulting from subsequent termination of the distribution agreement. The parties engaged in negotiations settling the Law 75 case in 2009, and in post agreement-termination negotiations with respect to Law 75 in 2013, to no avail. Now Casco seeks to use at trial statements made during those negotiations.

It is apparent that events relevant to Casco's *dolus* action are directly tied to those underpinning the Law 75 action. Casco put them together to construe a substantive legal theory of recovery. It has conditioned success on one action to success on the other action. And as indicated above, it is relying on Law 75 to calculate the damages it wants to make John Deere

liable for under the *dolus* claim. Thus, the Law 75 and the *dolus* actions are not separate within the scope of Fed.R.Evid. 408 to the point of permitting Casco to use the pre-termination and post-termination settlement evidence in this case.

Making the content of that evidence available would invite the very situation that Rule 408 is designed to avoid. The exclusion fits comfortably within the rule's strictures. See, Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 655 (4th Cir. 1988)(holding inadmissible settlement evidence originating in prior action arising out of continuation of feud between two former business partners); Lyondell, 608 F.3d at 298-300 (excluding settlement evidence involving a different case with shared factual nexus to present claim bearing directly on issues of liability between the same parties).

Third, evidence of disputes or controversies between John Deere and Casco prior to September 8, 2009 is relevant. For Casco, it explains better why John Deere terminated the distribution agreement in 2013 instead of the evidence John Deere has proffered to support its decision. John Deere points out that (1) there is better evidence to accomplish such purpose; (2) Casco's evidence is inappropriate, for it refers to time-barred disputes under Law No. 75; (3) the jury could perceive the evidence as one of wrongful acts from which a deceiving character and propensity evidence could be unlawfully inferred in violation of Fed.R.Evid. 404; and (4) the jury would be confused and misled because the evidence would re-open the 2009 litigation and call for speculation on whether the presiding judge in Civil Case No. 09-1508 (JAF) would have allowed a constructive termination action under Law No. 75 (Docket No. 177 at p. 16).

John Deere's reading focuses too narrowly on events sought to be captured by the 2009 litigation instead of the broader purpose for which, according to Casco, the evidence would be used, to legitimately challenge the 2013 termination of the distribution agreement. Whether there

is better evidence on the subject that Casco should rather be relying on is of no moment, for John Deere would be able to so argue at trial.

Both direct and circumstantial evidence is admissible if relevant and not otherwise excluded by a procedural rule or a law. Fed.R.Evid. 402. Evidence is relevant if it has *any* tendency to make a fact of consequence more or less probable than it would be without the evidence. See, Fed.R.Evid. 401; New Jersey v. T.L.O., 469 U.S. 325 (1985)(so stating in noting that evidence need not conclusively prove the ultimate fact in issue). The word *any* signals that evidence is relevant even if it only slightly or marginally alters the likelihood of a consequential fact. See, U.S. v. Hall, 653 F.2d 1002, 1005 (5th Cir. 1981)(so recognizing).

For that reason, evidence is not subject to exclusion solely because its probative value may be arguably low. See, Glen Weissenberger & James J. Duane, Weissenberger's Federal Evidence § 401.3 (7th ed. 2011)(so noting). Each item of evidence need only alter the probabilities of a factual issue to a slight extent, whereas the totality of the evidence must support the factual proposition sought to be proven if the proponent is to prevail on the issue. Id. It is not necessary that the item of evidence alone convince the trier of fact of the truth of the proposition for which it is offered. "A brick is not a wall," 1 McCormick on Evidence § 185 (7th ed. 2013) – relevance being the brick, sufficiency the wall.

Similarly, that the evidence involves or refers to time barred disputes under Law 75 does not mean it lacks probative value in connection with non-barred disputes, such as whether John Deere acted with just cause in terminating the distribution agreement in 2013. Under Fed.R.Evid. 105, evidence may be admissible for one purpose and not admissible for another purpose. And that same evidence may be used to provide context for the non-barred claims. See, National R.R. Passengers Corp. v. Morgan, 536 U.S. 101, 111 (2002)(holding that evidence of discrete acts

falling outside of the statutory time period may be used as background evidence in support of a timely claim under Title VII of the Civil Rights Act); 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4.2 (4th ed. 2013)(discussing relevance of background evidence under Fed.R.Evid. 401).

Contrary to John Deere's position, the evidence in question is not made inadmissible by Fed.R.Evid. 404(b). Rule 404(b)(1) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. However, it permits evidence of prior acts for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. See, Fed.R.Evid. 404(b)(2). That list of purposes is not exhaustive. U.S. v. Landry, 631 F.3d 597, 602 (1st Cir. 2011)(so noting); Udemba v. Nicoli, 237 F.3d 8, 15 (1st Cir. 2001)(same). The range of relevancy outside the ban is "almost infinite," the purposes "are not mutually exclusive," and the particular line of proof "may fall within several of them." U.S. v. Fields, 871 F.2d 188, 196 (1st Cir. 1989).

In this framework, Rule 404(b) has been interpreted to permit evidence of prior conduct for purposes such as to provide background or context, (See, U.S. v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000); U.S. v. Currier, 821 F.2d 52, 55 (1st Cir. 1987)); and to explain the relationship between the parties. See, U.S. v. Guerrero, 169 F.3d 933, 944 (1st Cir. 1999). Accordingly, without being necessarily exhaustive, the evidence that John Deere seeks to exclude may be probative of motive, intent, and context. The probative value of the evidence would not be substantially outbalanced by the elements to which John Deere has referred, or by any of the factors justifying exclusion under Fed.R.Evid. 403.

Fourth, newspaper or magazine articles offered to prove the truth of the matter asserted would constitute inadmissible hearsay under Fed.R.Evid. 801(c). See, Abruzzi Foods, Inc. v. Pasta & Cheese, Inc., 986 F.2d 605, 607 (1st Cir. 1993)(so holding); Bado-Santana v. Ford Motor Co., 364 F.Supp.2d 79, 91 (D.P.R. 2005)(ruling that evidence as to news articles is inadmissible hearsay if offered to prove the truth of the matter discussed in them). If the articles were brought for a different purpose, the court would revisit the issue.

    C. **Casco's Motion in Limine (Docket No. 180)**

Casco requests that John Deere's termination letter – which John Deere intends to introduce at trial – be excluded as hearsay, claiming that it is not admissible as a business record under Rule 803(6) of the Federal Rule of Evidence. Rule 803(6) excepts records of a regularly conducted activity from the hearsay exclusionary rule. To that end, a record of an act, event, condition, opinion, or diagnosis is not excluded as hearsay if:

> (1) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> (2) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (3) making the record was a regular practice of the activity;
>
> (4) all of these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (5) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed.R.Evid. 803(6).

Casco claims the termination letter (1) was not routine, for it was not created as part of John Deere's activity of disciplining its dealer, "an activity incidental to its main business activity"

of selling construction equipment, but in anticipation of litigation and for litigation; (2) lacks any guarantees of trustworthiness; and (3) is irrelevant or cumulative, given that the parties have stipulated that John Deere terminated the distribution agreement on March 29, 2013 (Docket No. 180 at pp. 1-5).

In turn, John Deere posits the letter was prepared as part of its typical, regular and routine practice of managing its dealers since, when required to terminate dealers for performance-related reasons, John Deere does so through letters of termination; that Casco cannot make a showing that the source of information, method, or circumstances of preparation indicate a lack of trustworthiness; and the termination letter would be admissible for purposes other than for establishing the truth of the matters asserted therein. As support, it filed a Declaration pursuant to 28 U.S.C. § 1746 from Victor Mauricio Lara, Manager of Commercial Development for the Latin American region for John Deere (Docket No. 185, Exh. 1).[5]

Properly evaluated, the termination letter is admissible under Rule 803(6). As shown by Mr. Lara's Declaration, it satisfies the foundational requirements established for admissibility. The fact that John Deere sent only one termination letter to Casco does not show termination letters are incidental instead of routine under Rule 803(6). Although the rule does not extend the hearsay exception to statements linked to activity that is casual or isolated, Kassel v. Gannett Co., Inc., 875 F.2d 935, 944-945 (1st Cir. 1989), a record challenged as non-routine is admissible where, as here,

---

[5] According to the declaration, Mr. Lara is responsible for: (1) managing relationships with the Construction & Forestry dealer network; (2) acting as a primary point of contact for matters related to overall dealer performance; and (3) in conjunction with John Deere Financial personnel, reviewing and analyzing dealer financial statements, and managing credit and account issues, including dealer receivables. Furthermore, Mr. Lara states that (1) he prepared the termination letter on or about March 29, 2013; (2) based on information personally known to him, and information transmitted to him from the records kept by John Deere; (3) such letters are routinely prepared by John Deere because they serve to record important transactions with the dealers and they help to provide internal controls in managing dealer relationships; and (4) he is the custodian of the letter and has been since it was sent to Casco.

it is shown to be the product of a regular practice of the business, has been prepared in the usual course of that business activity, and meets the other requirements of the rule. Id.

### D. John Deere's Fed.R.Evid. 803(6) Challenge (Docket No. 188)

Like Casco, John Deere makes a Rule 803(6) challenge, questioning the admissibility, of minutes that Johanna Rivé of Casco prepared documenting the substance of meetings between Casco and John Deere on January 11, 2005 and March 16, 2005. It argues the rule's foundational requirements have to be established by the custodian of the record, another qualified witness or a certification that complies with Rule 902(11) or (12), and that nowhere in the documents that Casco has filed is there any evidence to suggest that the minutes meet those requirements (Docket No. 188 at p. 4 n. 1).

Casco responds that Ms. Rivé is a person with personal knowledge of the events, and she drafted the minutes; the minutes consist of detailed contemporaneous memoranda about the meetings between Casco and John Deere; John Deere had ample opportunity to cross examine her during a deposition, and yet has failed to present any evidence that the minutes are not trustworthy or were not taken in the course of Casco's business activities (Docket No. 186 at p. 12).

Based on the parties' arguments, it is unclear how the minutes qualify as a record regularly prepared and maintained in the course of regularly conducted business activity within the scope of Rule 803(6). For instance, there is no indication that minutes were regularly prepared by Casco of meetings with organizations with whom it did business – or with particular organizations – at or near the time the minutes in question were prepared. Admissibility does not attach to a statement just because a person engaged in a business activity writes it down; it is essential that the statement be of a type that persons engaged in the activity in question record routinely. See, U.S. v. Goodchild, 25 F.3d 55, 62 (1st Cir. 1994)(holding that for the document to be admissible, it must

have been the regular practice of the business to make the document); U.S. v. Lemire, 720 F.2d 1327, 1350 (D.C. Cir. 1983), cert. denied, 467 U.S. 1226 (1984)(memorandum prepared in November 1976 providing history and background of transaction from December 1975 to June 1976 did not satisfy timeliness requirements of Rule 803(6)); Steven Goode & Olin Guy Wellborn III, Courtroom Handbook on Federal Evidence, 501 (2014)(discussing admissibility requirements under rule).

Parallel to the regularly conducted activity, the minutes would not come within this exception unless it was the regular practice of the business to maintain them.  See, U.S. v. Grossman, 614 F.2d 295, 297 (1st Cir. 1980)(admitting catalog in part because it was kept in the course of a regularly conducted business activity); Joseph W. Cotchett & G. Richard Poehner, Federal Courtroom Evidence § 803 (5th ed. 2014)(outlining requirement).  These issues are contextual.  See, U.S. v. Jacoby, 955 F.2d 1527, 1536-1538 (11th Cir. 1992)(admitting real estate closing memorandum prepared in the course of a regularly conducted business activity in which it was the regular practice to make such memoranda, even though they would be dictated only if anything needed explaining in the closing); Kassel, 875 F.2d at 944-945 ("Report of Contact" forms properly admitted even though witness testified that he did not usually complete such forms, but did so only when he perceived need).

In the event the minutes did not qualify for admissibility under Rule 803(6), their content may be admitted if they qualified as non-hearsay under Rule 801 or met the requirements of some other hearsay exception rule.  See, Olsen v. Correiro, 189 F.3d 52, 62-63 (1st Cir. 1999)(observing that evidence not falling within one exception to the hearsay rule could still be admissible because it falls within some other hearsay exception); Glen Weissenberger & James J. Duane, supra at §

803.33 (discussing same principle in context of Rule 803(6)). Whether such is the case here may be brought forth during the trial.

### III.     CONCLUSION

In view of the foregoing, John Deere's "Motion in Limine Regarding Plaintiff's CPA" (Docket No. 156) is DENIED; "Defendant John Deere Construction & Forestry Company's Motion in Limine" (Docket No. 177) is GRANTED IN PART; and "Plaintiff's Motion in Limine to Suppress Termination Letter" (Docket No. 180) is DENIED.

**SO ORDERED.**

In San Juan, Puerto Rico, this 8th day of July, 2015.

                                                s/Pedro A. Delgado-Hernández
                                                PEDRO A. DELGADO HERNANDEZ
                                                U.S. DISTRICT JUDGE